GRAND TRUNK RY. CO. v. CENTRAL VT. R. CO.

(Circuit Court, D. Vermont. December 3, 1898.)

**1. RAILROADS—RIGHTS OF MORTGAGEE—SUBSEQUENT LEASE OF ROAD.**

Neither the mortgagee of a railroad property nor the purchaser at a sale under the mortgage is entitled to enforce the covenants of a lease made by the mortgagor after the execution of the mortgage, binding the lessee to make good all depreciation of the property from wear or otherwise during the term of the lease, when the depreciation was such as would or might have followed the use of the property by the mortgagor, and would not have constituted waste, which could have been restrained or recovered for by the mortgagee.

**2. SAME—PREFERRED CLAIMS AGAINST—CONSTRUCTION OF VERMONT STATUTE.**

R. L. 1880, § 3353 (V. S. § 3803), giving claims against a railroad company for "the loss of property while in the possession of said corporation" preference over mortgages given by the company, applies only to liabilities growing out of the operation of a railroad within the state, and does not include a claim based on the covenants of a lease of a railroad in another state.

On motion for leave to intervene in foreclosure suit, and for the allowance of claims as preferred debts under the state statute.

James Byrne, for petitioners.

Michael H. Cardozo, Henry Crawford, Elmer P. Howe, and Charles M. Wilds, for opposing parties.

WHEELER, District Judge. This is a creditors' bill in behalf of all who may come in, and in which foreclosures are pending. The Ogdensburg & Lake Champlain Railroad Company mortgaged its road, which is in the state of New York, April 1, 1880, "and all and singular the railway, rails, bridges, fences, switches, privileges, rights and real estate, station houses, store houses, elevators, offices, and all other buildings and fixtures, of every kind and description, now owned by said company, or which may be hereafter owned or acquired by it, except as hereinafter stated, together with all the locomotives, engines, and tenders, passenger cars, freight cars, and all other cars, and all shop stock, tools, fuel, machinery, and other property now owned or hereafter to be owned or acquired by said company and in any way belonging or appertaining to the said railroad," to trustees to secure bonds,—and June 1, 1886, entered into an agreement for the operation of the road which was assumed by the defendant, the Central Vermont Railroad Company, by which the latter agreed with the former, "during the continuance of this agreement, to keep up and maintain in good order and condition, by repairs and renewals, as the same may be needed, all the present equipment of the party of the first part, and to add such new cars and engines as may be necessary to provide for waste and depreciation as the same may from time to time occur; to mark distinctly and in the usual manner all such new locomotives and other roll-

ing stock; to denote that they appertain and belong to the said
party of the first part, and so deliver them upon the road of the
said party of the first part, subject only as its other property to the
terms of this agreement; to keep said railroad, fences, bridges, build-
ings, and structures, and its and their appurtenances, in good order
and repair, putting in the track of said railroad from time to time
such new steel rails as may be necessary, so that all the railroad
tracks, switches, turnouts, fences, docks, bridges, buildings, shops,
tools, machinery, locomotives, cars, rolling stock, equipment, and
everything herein named or not named, which is taken, possessed, or
controlled by the party of the second part, or any of its officers by
virtue of this agreement, shall be kept in repair, and, at the termi-
nation of this agreement, restored to the party of the first part in
as good and serviceable condition as at the date when this agree-
ment is to go into effect;    *    *    *    to keep policies of insurance in
full force and effect upon all the buildings, bridges, and docks of
said party of the first part, and such other property of the party of
the first part as is now insured by it, to a proper and safe extent;
and to have such policies written for the benefit of whom it may
concern, and referring to the interests of the parties hereto, and,
in case of loss, all sums recovered from insurance companies on
existing or future policies shall inure to the benefit of the party of
the second part, and shall be expended in replacing or repairing the
structure burned." The mortgage was foreclosed, and the amount
found due was $3,797,717.50, and the property, including any and
all "acquired for use in connection with or for the purposes of said
railroad and properties," "and all choses in action, real and per-
sonal," were sold pursuant, to Charles Parsons, William Lummis, and
Charles R. Batt, the first of whom has assigned to the other two.
They have presented a petition herein setting forth that, while the
road was operated by the defendant, the rolling stock depreciated
$695,650; that an elevator was destroyed by fire, on which the loss
was $200,000, for which the defendant received $85,618.08 insurance,
$35,419.31 of which has never been used for the road; and praying
leave to intervene, and that these claims be allowed, and preferred
under the statutes of Vermont, or that the petitioners be admitted
to defend against the mortgages. This application has been heard
on the face of the petition.

Undoubtedly, a mortgagee may at any time, in equity, restrain
waste that will impair the security, and, after condition broken,
maintain any appropriate action for material injury to the property
that would amount to such waste; but this property was mortgaged
in, and to remain in, use by the mortgagor; and the depreciation
set up is such as would or might follow from the use, and would
not be restrainable waste. The condition of the mortgage does not
appear to have been broken while the defendant was in possession,
and no right of action for waste could have accrued then for what
might have been actionable after condition broken; but the same
use would not then appear to be actionable waste, any more than it
would be restrainable before. The liability of the defendant would
seem to be personal upon the agreement for nonfulfillment, with-

out reference to the mortgage; and not such as would follow the property or mortgage. As the petitioners are merely the purchasers of the property at foreclosure sale, they do not appear to have acquired any title to this right of personal action, if any, upon the agreement.

On this view there seems to be no reason for allowing the petition to be filed; but the petitioners appear to be pursuing this claim here in good faith. This conclusion may be erroneous, and an absolute denial of leave to file the petition might unjustly cut off all right of appeal, and deprive them of such opportunity as they should have.

The statute upon which the idea of a preference over the mortgages upon the assets rests is this:

"Mortgages of railroad franchises, furniture, cars, engines and rolling stock when properly executed and recorded shall vest in the mortgagee a mortgage interest in and lien upon such property without delivery or change of possession, and for the purpose of mortgage all such property shall be deemed part of the realty. But this section shall not prevent such furniture, cars, engines and rolling stock from being attached by a person having a claim against the corporation holding such property for an injury sustained on its road by negligence of the corporation or for services rendered or materials furnished to keep said road in repair, or to run the same, or for liabilities as common carriers, or for the loss of property while in the possession of said corporation; and such property, when so attached, may be taken, held and disposed of as though said property had not been mortgaged." R. L. 1880, § 3353 (V. S. § 3803).

The only words of liability applicable to a claim like this are "for the loss of property while in the possession of said corporation." The statute refers, of course, to railroads, and the operation of railroads, within this state. This claim arises from the operation of a railroad without the state. The liability for property received as a carrier in the operation of a road within the state may extend without the state. Cutts v. Brainerd, 42 Vt. 566. This claim does not grow out of the operation of any railroad within the state, nor out of the loss of property anywhere, but only out of an executory contract in respect to the operation of another road out of the state. It seems to be not only without the territory, but without the intent, of the statute. The highest court of the state has said in respect to this statute, when it was sections 101 and 102 of chapter 28 of the General Statutes:

"It is clear that construction expenses are excluded in section 102. It is clear that general creditors are excluded. The statute (section 101) makes the mortgage valid against all creditors except those especially enumerated in section 102. Every liability specified in section 102 grows out of the operation of the road."

The words and their connection were the same as those of the section of the Revised Laws quoted, into which the two sections were brought, and which were in force at the time of the transactions in question. There does not appear to be sufficient substance to this claim to warrant allowing the petition to be filed, and allowing intervention thereon, in the foreclosures, or where the mortgagees would be required to answer. Leave to file the petition as a common creditor in the original cause granted; the residue is denied.